## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GUSTAVE DEBREE,  :  No. 3:20cv247
           **Plaintiff**  :
             :  (Judge Munley)
      **v.**  :
             :
AMERICAN STATES  :
INSURANCE COMPANY,  :
           **Defendant**  :

## MEMORANDUM

Before the court for disposition is Defendant American States Insurance Company's motion for partial summary judgment in this case alleging breach of insurance contract and insurance bad faith. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**

The instant lawsuit has its genesis in a motor vehicle accident which occurred on September 15, 2018. (Doc. 54, Def.'s Stmt. of Undisputed Facts ("SOF") ¶ 12).[1] Plaintiff Gustave Debree was a passenger in a 2018 Jeep Grand Cherokee driven by Jeff Daroja. (Id.) The tortfeasor, Daroja, who was under the influence of alcohol, drove the automobile into a tree. (Doc. 30, Am. Compl. ¶

---

[1] Unless noted otherwise, the court will cite only to the defendant's SOF for facts which the plaintiff admitted in its response to the SOF. (See Doc. 56, Plaintiff's Response to SOF).

23).  Plaintiff's amended complaint asserts that plaintiff suffered the following

personal injuries as a result of the accident:

> a) forehead laceration;
> b) nasal bone fracture;
> c) L 7/8 rib fracture;
> d) R TP of L 1, 2, 3, 4 fracture; and
> e) L open, dislocated tib/fib/ talus fracture;
> f) shortness of breath;
> g) chest pain;
> h) close left weber C fibular fracture with disruption of syndesmosis;
> i) open left ankle medial deltoid ligament disruption;
> j) displaced oblique fracture of shaft of humerus, left arm;
> k) stiffness of right elbow; and
> l) stiffness of left hand;
> m) concussion[.]

(Doc. 23, Am. Compl. ¶ 28).

Plaintiff required multiple surgeries, thirteen days in the hospital, staples in

his head, physical therapy, home exercise therapy, x-rays, MRIs, CT scans, pain

medication and other prescription medication.  (Id. ¶ 29).

Dajora's automobile insurance company offered the full insurance liability

limits of $250,000 to plaintiff. (Doc. 54, SOF ¶ 13).  Plaintiff's insurance

automobile insurance carrier, Defendant American States Insurance Company,

consented to the settlement with Dajora and his automobile insurance carrier.

(Id. ¶ 14).

Plaintiff sought underinsured motorist benefits ("UIM") from the defendant.

The limits of plaintiff's UIM benefits with defendant is $300,000.  (Doc. 30, Am.

Compl. ¶ 37).  On September 10, 2019, defendant offered $25,000 to settle the UIM claim, which plaintiff rejected.  (Doc. 54, SOF ¶¶ 15-16).  Plaintiff made a counterdemand of $290,000 on September 30, 2019, which defendant also evidently rejected.  (Id. ¶ 17).

On February 12, 2020, plaintiff instituted the instant lawsuit.  (Doc. 1, Compl.).  On March 24, 2021, plaintiff filed an amended complaint.  (Doc. 30).  The amended complaint is the operative pleading before the court and contains two counts, Count II, Breach of Contract – UIM Benefits and Count III – Bad Faith pursuant to 42  PA. CONS. STAT. ANN. § 8371.[2]

On October 26, 2022, defendant filed an Offer of Judgment of $150,000 to resolve all claims in this case pursuant to Rule 68 of the Federal Rules of Civil Procedure. (Id. ¶ 21, Doc. 51, Offer of Jdgmt.).  Plaintiff did not accept the Offer of Judgment, and on November 30, 2022, defendant filed the instant motion for partial summary judgment, which seeks judgment on the amended complaint's bad faith claim. (Doc. 52).[3]

---

[2] Although the amended complaint has only two counts they are labeled II and III.

[3] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

3

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. §

1332.  The parties are citizens of different states.  (Doc. 30, Am. Compl. ¶¶ 1-2).

Additionally, the amount in controversy exceeds $75,000.  (Id. *Ad Damnum*

*Clause*).   Because complete diversity of citizenship exists among the parties and

the amount in controversy exceeds $75,000, the court has jurisdiction over this

case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all

civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between . . . citizens of different

states[.]").  As a federal court sitting in diversity, the substantive law of

Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210

F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78

(1938)).

**Legal standard**

Granting summary judgment is proper "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury

Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his

standard provides that the mere existence of *some* alleged factual dispute

4

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant seeks summary judgment on Count III of the amended complaint, plaintiff's claim for statutory bad faith under 42 PA. CONS. STAT. § 8371 ("section 8371").  The law provides that an "insurance company has a duty to deal with its insured on a fair and frank basis, and at all times, to act in good faith."  Bert v. Nationwide Mut. Ins. Co., Inc., 44 A.3d 1164, 1170 (Pa. Super. Ct. 2021) (internal quotation marks and citation omitted).  Section 8371 authorizes recovery for an insurance company's bad faith toward an insured. It provides for several remedies upon a finding of bad faith: (1) an award of "interest on the amount of the claim" at a rate equal to "the prime rate of interest plus 3%"; (2) an award of "punitive damages against the insurer"; and/or (3) an assessment of "court costs and attorney fees against the insurer." 42 PA. CONS. STAT. § 8371

The Pennsylvania Supreme Court has held that "to prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence,[4] (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly

---

[4] Clear and convincing evidence is the "highest standard of proof for civil claims[.]"  Berg v. Nationwide Mut. Ins. Co., 189 A.3d 1030, 1037 (Pa. Super. Ct. 2018) (internal quotation marks and citation omitted).  It "requires evidence clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance of the truth of the precise facts in issue." Id. (internal quotation marks and citation omitted).

disregarded its lack of reasonable basis in denying the claim." Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017).  Bad faith liability can be founded on an insurance company's "lack of a good faith investigation into facts, and a failure to communicate with the claimant." Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006) (citation and quotation mark omitted).

Generally, the analysis of an insurance bad faith claim examines the conduct of the insurer and not the insured. Mohney v. Am. Gen. Life Ins. Co., 116 A.3d 1123, 1138 (Pa. Super. Ct. 2015).  The Third Circuit Court of Appeals has explained that "all that is needed to defeat a claim of bad faith under § 8371 is evidence of a reasonable basis for the insurer's actions or inaction." Gibson v. State Farm Mut. Auto. Ins. Co., 994 F.3d 182, 191 (3d Cir. 2021).

Defendant argues that plaintiff cannot establish:  1) that defendant did not have a reasonable basis for denying benefits under the policy; or 2) that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.  The record, according to the defendant, establishes that the parties merely disagree over the value of the UIM claim, and such a disagreement does not constitute bad faith. See Durdach v. LM Gen. Ins. Co., 3:20cv926, 2021 WL 84714 at * 5 (M.D. Pa. Jan. 11, 2021).

Plaintiff argues that factual disputes exist regarding defendant's

7

investigation of the claim which preclude the granting of summary judgment on the bad faith claim.  After a careful review and bearing in mind that bad faith claims are very fact specific, the court finds that the plaintiff has submitted sufficient evidence to defeat defendant's motion for partial summary judgment. A review of this evidence follows.

The claims adjuster who was assigned to plaintiff's UIM claim was Jill Ordonez who has worked for American States for thirty years and is currently a Senior Claims Resolution Specialist.  Id. ¶ 22.  She based  her evaluation of the claim on her experience and a "review of everything in the file."  (Doc. 52-6, Def. Ex. 4, Ordonez Dep. at 39).  Beyond this, defendant's briefing does not explain the manner in which Ordonez performed the evaluation. For example, defendant does not highlight which documents or records support their valuation of the claim.

At the time of the evaluation of the claim performed by Ordonez in October 2019, plaintiff asserts that the following expert reports were uncontested:  The Independent Medical Examination (IME) report of Dr. Lucien Bednarz (Doc. 56-2).   This report recounted the defendant's injuries as follows:  "Depressed mood, tearful, anxious, headache, forgetful and had vertigo & improving rib pain. . . ." The diagnosis related to the injuries sustained in the accident included: 1.  Facial fractures;  2. Concussion with vertigo; 3. Multiple left rib fractures; 4. Multiple

lumbar transverse process fractures; 5. left humeral fracture sats post surgery; 6. left ankle fracture dislocation with ligamentous disruption status post surgery; 7. Left hand contusion; 8. Posttraumatic depression. (Doc. 56-2 at 4-5).

Dr. Bednarz opined that it is unlikely that plaintiff would be able to return to his pre-injury job of automotive body work and he would have a diminished work life expectancy due to his injuries. (Id. at 2, 5). Defendant never asked for clarification from any of plaintiff's treating physicians after receiving Dr. Bednarz' report although it had authorization for all of plaintiff's medical records. (Pl. Ex. 1, Friel Dep. at 60-61).

At her deposition, the defendant's corporate designee, Christine Friel, did not know what evidence defendant had at the time of the evaluation to contradict Bednarz' report. (Doc. 56-1, Pl. Ex. 1, Friel Dep. at 24). She would expect such evidence or contrary opinions to be in the claims file. (Id. at 25). Evidently, however, there was none there.

Additionally, an expert vocational report from PA Advocates indicated plaintiff would suffer lost earnings of $1,194,266.00 due to the accident. (56-3, Pl. Ex. 3, Report of PA Advocates Inc. at 26). A report from Verzilli Consulting Group, Inc., Consulting Economists estimated a past and future loss in earning capacity of $1,502,406. (Doc. 56-5, Pl. Ex. 5, at 8).

Furthermore, a report from Desai Medical Cost Projection projected a range of $107,793 to $110,310 for plaintiff's future medical costs.(Doc. 56-4, Pl. Ex. 4, at 4). Despite this estimate, the claims adjuster recommended zero dollars for future medical costs.  (Doc. 52-6, Dep. Ordonez at 86)

Despite all of this evidence of great economic loss, it is undisputed that defendant only offered $25,000 to settle the claim.  It also appears undisputed that this offer was never increased until the offer of judgment nearly three years later which increased the offer by $125,000 to  $150,000.  (Doc. 51).

In support of its position that it had a reasonable basis for its valuation of the claim, the defendant referred to a social security claim filed by the plaintiff. The claim was denied, and the defendant took this as evidence that plaintiff would be able to work within a year.  (Ex. 1, page 52).  Accordingly, defendant limited plaintiff's covered period of disability to one (1) year.  (Id.)  Questions remain regarding whether the defendant understood the details of this social security claim or only knew the conclusion.  It appears that the claims adjuster and corporate designee did not understand or investigate into the details of the social security case.  These details include what plaintiff claimed his disability was, whether it was mental or physical disability and what kind of doctor evaluated him relative to the claim.  (Doc. 52-6, Def. Ex. 4, Ordonez  Dep. at 44-47, Doc. 56, Friel Dep. at 53-57).

Additionally, years prior to his accident plaintiff had been convicted of several crimes and had been incarcerated. (Doc. 52-4, at 10). The record indicates that he had been working for eighteen (18) years since his last period of incarceration. (Id. at 11). Defendant supported its decision of not providing a higher wage loss benefit to the plaintiff on the basis that he had been incarcerated and that would make finding a job more difficult. Nothing, however, appears in the policy that indicates that defendant would adjust the claim based upon a criminal record. Additionally, it is not clear from the record whether plaintiff in fact did have trouble finding a job due to his past criminal history as he had been working consistently since that time.

It appears therefore that a factfinder could conclude that defendant relied upon the following in evaluating plaintiff's claim: a social security case which it did not understand or have the full facts on; and plaintiff's prior criminal convictions.[5] In so doing, the defendant may have ignored, or provided very little weight to the evidence presented by the plaintiff to support his claim .

The defendant's process in evaluating plaintiff's claim could be found to amount to more than a dispute over the value of the claim and could indeed be

---

[5] In fact the defendant, by way of its statement of undisputed material facts, continues to highlight the denial of social security benefits and plaintiff's criminal history as reasons for their valuation of plaintiff's UIM claim. (Doc. 54, SOF ¶¶ 19-20).

11

found to be bad faith.[6]  In other words, a factfinder could conclude that the

defendant did not have a reasonable basis for denying benefits under the policy

and knew or recklessly disregarded its lack of reasonable basis in denying the

claim.  See Rancosky, 170 A.3d at 377 (setting forth the bad faith standard).

The defendant cites to the report and recommendation issued in this case

on March 1, 2021 for the proposition that the mere fact that defendant did not

accept plaintiff's expert's valuation of the claim does not amount to a claim of

statutory bad faith.[7]  (See Doc. 29, Report and Recommendation of March 1,

2021 at 14).  Here, however, more exists than a "mere failure" to accept

plaintiff's expert's valuation of the claim.  There was much evidence that was not

accepted.  Moreover, a jury could conclude that defendant did not investigate the

claim properly but rather provided great weight to a social security decision that

the defendant's representatives did not understand and prior criminal convictions

to the exclusion of other evidence.[8]

_____

[6] Indeed, the defendant's flings do not provide a clear picture of the evaluation and/or investigation that took place. The material filed by the defendant merely states that the claims adjuster examined the contents of the file.  (Doc. 53, Def.'s Supp. Br. at 15).  What those contents were and how they supported the adjustor's position are not set forth in the defendant's briefing.

[7] The court accepts this statement of the law merely because it is law of the case, with no analysis and no independent determination that the report and recommendation's reasoning on this point is cogent.

[8] Perhaps the process utilized by the defendant to analyze the claim is more fully described in evidence provided by the parties. The defendant, however, has not cited to the pertinent parts of the record.  The court "is not obliged to scour the record to find evidence that will support a

**Conclusion**

The court concludes that a factfinder may find that the defendant acted in bad faith.  Much evidence presented by the plaintiff appears to have been ignored and great weight was provided to other questionable evidence.  The defendant does not set forth exactly how the claim was reviewed and what evidence was relied upon and what evidence was rejected and why. Accordingly, summary judgment on the bad faith claim is inappropriate and will be denied.  An appropriate order follows.

Date: 7/30/24

JUDGE JULIA K. MUNLEY
United States District Court

_____

party's claims." Perkins v. City of Elizabeth, 412 F. App'x 554, 555 (3d Cir. 2011) (citing Doebler's Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006).